TOMPKINS COUNTY TRUST COMPANY, Plaintiff, *v.* GLENN W. HERRICK, H. N. OGDEN, LERA COBB BOSTWICK, as Executrix of the Estate of CHARLES D. BOSTWICK, Defendants.

Supreme Court, Special Term, Tompkins County, May 19, 1939.

*Allan H. Treman* [*Enos Pyle* of counsel], for the plaintiff.

*Rexford W. Titus,* for the defendants Glenn W. Herrick and Henry N. Ogden.

GOLD (A. E.), J.   The motion is to vacate a deficiency judgment, following mortgage foreclosure, on the ground that the plaintiff

failed to comply with section 1083 of the Civil Practice Act, as amended by chapter 510 of the Laws of 1938, in effect April 7, 1938.

The mortgage was given on October 2, 1933, to secure an indebtedness of $16,500. The action to foreclose was commenced on May 28, 1938. Plaintiff bid in the property on the sale for $5,000 and obtained a deficiency judgment for $12,356.63, representing roughly the difference between the mortgage debt and the bid.

The old procedure was followed. Judgment was granted on the referee's report without notice. No proof was offered of the fair and reasonable market value of the mortgaged premises as required by the new legislation. The judge who heard the application could not act on his own familiarity with the property. Plaintiff's argument to the contrary is without merit. Neither this nor any other justiciable issue may be determined upon a judge's personal knowledge of facts outside the record or upon personal investigation. (*Central Hanover Bank & Trust Co.* v. *Eisner*, 276 N. Y. 121, 125.) The statute requires proof " by affidavit or otherwise," which means legal proof as upon any other question of fact. (*New York Life Ins. Co.* v. *Guttag Corp.*, 265 N. Y. 292, 296.)

Chapter 510 of the Laws of 1938 applies as well to mortgages given before its enactment as after. Plaintiff claims not but the language used is susceptible of no other interpretation. " Simultaneously with the making of a motion for an order confirming the sale provided such motion is made within ninety days after the date of the consummation of the sale by the delivery of the proper deed of conveyance to the purchaser in all cases *where the sale is held after the date this section as hereby amended takes effect*, and in all cases *where the sale was held prior to the date this section as hereby amended takes effect* and said sale has not heretofore been confirmed, then *within ninety days from the date this section as hereby amended takes effect* or within ninety days after the date of the consummation of the sale by delivery of the proper deed of conveyance to the purchaser, regardless of whether the sale was held *prior or subsequent to or on the date this section as hereby amended takes effect*, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action."

The intent, moreover, is confirmed by one of the evident purposes of the statute. The limitations on deficiency judgments are identical with those contained in section 1083-a of the Civil Practice Act, the emergency statute, so called. Section 1083-a, however, applies only to mortgages given before July 1, 1932, on the theory

apparently that " the depression which led to the emergency began late in 1929 and the Legislature believed that the low point was reached about July 1, 1932." (*Decker* v. *Dutcher*, 247 App. Div. 689, 691.) The restriction, although criticised (*Home Owners' Loan Corp.* v. *Roach*, 163 Misc. 760), was rigidly enforced. (*Chase* v. *Harvey*, 253 App. Div. 15; *Central National Bank of Yonkers* v. *Marks*, 243 id. 526.)

The injustice of excluding mortgages given after July 1, 1932, became apparent, particularly when economic recovery continued to lag. Attempts were made to deal with such mortgages in accordance with section 1083-a under what was conceived to be ample power of a court of equity. (*Monaghan* v. *May*, 242 App. Div. 42; *Home Owners' Loan Corp.* v. *Wood*, 164 Misc. 215.) Speedy disagreement followed. (*Emigrant Industrial Savings Bank* v. *Van Bokkelen*, 269 N. Y. 110, 116; *Guaranteed Title & Mort. Co.* v. *Scheffres*, 275 id. 30; *Chase* v. *Harvey*, supra.) The Legislature could well assume that the courts were powerless to interfere without specific legislative authority except in cases of extraordinary hardship.

The new statute was designed, in part, to remove the limitation. " It would seem that the present provisions with respect to deficiency judgments, namely, section 1083-a of the Civil Practice Act, are fair both to the mortgagor and mortgagee, both in times of emergency and in normal times, and that by appropriate amendment it might well be continued beyond the emergency period as a permanent part of the Civil Practice Act *with respect to existing mortgages.*" (Italics supplied.) (Report of the Joint Legislative Committee on Mortgage Moratorium and Deficiency Judgments, Legis. Doc. [1938] No. 58, p. 35.)

The crucial question is whether chapter 510 of the Laws of 1938, as so construed, violates the contract clause of the Federal Constitution (Art. 1, § 10). The only decision thus far holds that it does. (*Home Owners' Loan Corp.* v. *Margolis*, 168 Misc. 945, Supreme Court, Westchester connty, decided July 20, 1938.) We cannot agree.

It is undoubtedly true, as pointed out in the *Margolis* case, that the right to a deficiency judgment is part of the contract protected against impairment by subsequent legislation. (*Barnitz* v. *Beverly*, 163 U. S. 118; *New York Life Ins. Co.* v. *Guttag Corp.*, 265 N. Y. 292, 296.) " To know the obligation of a contract, we look to the laws in force at its making." (*Worthen Co.* v. *Kavanaugh*, 295 U. S. 56, 60.)

It is also true, at least until recently, that cases upholding the validity of section 1083-a, and kindred legislation, are without con-

trolling force here. Constitutional justification was found for temporary restrictions on deficiency judgments in the police power of the State during an emergency. (*Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 426; *Klinke* v. *Samuels*, 264 N. Y. 144, 149; *Matter of People* [*Tit. & Mtg. Guarantee Co.*], Id. 69, 83; A. H. Feller, Moratory Legislation [1933], 46 Harv. Law Rev. 1061, 1081.) " Emergencies, however, awake legislative powers that sleep in normal times." (*New York Life Ins. Co.* v. *Guttag Corp.*, 265 N. Y. 292, 296.)

The new statute, however, is not limited in time. It is intended to express the permanent policy of the State. It may be upheld, if at all, only upon a finding that there is actually no impairment in the constitutional sense.

It must be admitted that the question, if limited to the decisions in this State, is not free from considerable doubt. The cases dealing with the constitutionality of the emergency legislation (§ 1083-a) assumed that the restrictions on deficiency judgments impaired the obligation of existing mortgages. Without such an assumption, there would have been no need to find justification in the police power during an emergency. Nevertheless, the point was not actually decided and it may reasonably be regarded as still open to inquiry.

It is not decisive, of course, that chapter 510 of the Laws of 1938 deals only with procedure and not the right to a deficiency judgment. The distinction, although often made, is not controlling. " Not even changes of the remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason or in a spirit of oppression." (*Worthen Co.* v. *Kavanaugh*, 295 U. S. 56, 60.) Nevertheless, there is no impairment by a change in remedy if the obligation may still be enforced " according to the course of justice as it existed at the time the contract was made." (Cooley, Constitutional Limitations [7th ed.], p. 406; *Oskosh Waterworks Co.* v. *Oshkosh*, 187 U. S. 437; *Bronson* v. *Kinzie*, 1 How. 311.) Enforcement may be rendered less speedy or recovery more difficult but a change, not so substantial as to impair the value of the security, is still within the Constitution. (*Ogden* v. *Saunders*, 12 Wheat. [25 U. S.] 213; *Tennesee* v. *Sneed*, 96 U. S. 69.) " It is recognized that the Legislature may modify or change existing remedies or prescribe new modes of procedure without impairing the obligation of contracts if a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract." (*Conley* v. *Barton*, 260 U. S. 677, 681; *Sliosberg* v. *New York Life Ins. Co.*, 244 N. Y. 482.)

Tested by these principles, chapter 510 of the Laws of 1938 does not offend the contract clause. Those holding mortgages executed

before the enactment may still enforce them. The right to deficiency judgment remains intact. The changes in procedure, viewed in the light of the existing law, are not so oppressive as to cut down the value of the obligation. Mortgagees may still recover their debts in full. The effect of the statute is to prevent recovery of more. More, whether in money or property, there was no right to collect, even before the enactment, on principles of equity which the courts could and to a considerable extent did enforce.

It is true that a mortgagee before the statute ordinarily had judgment for the difference between the mortgage debt and the amount realized on the sale without regard to the value of the property. The right, however, was never absolute. Equity could control it to prevent an unconscionable result. " In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience." (*Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 446.)

In this State the extent of permissible equitable interference is uncertain. That it is considerable, however, can hardly be doubted. *Monaghan* v. *May* (242 App. Div. 64) is a leading case. Although a mortgage was executed after July 1, 1932, deficiency judgment was denied when it appeared that the value of the property equalled or exceeded the debt. The court held that it had " inherent power to place limitations upon the remedies available to a mortgagee in consonance with fundamental doctrines of equity " (p. 65). This doctrine was disapproved by the Court of Appeals in *Emigrant Industrial Sav. Bank* v. *Van Bokkelen* (269 N. Y. 110, 116), but disapproval was unnecessary to the decision. For that reason and in spite of the disapproval, the *Monaghan* case was again followed in *Guaranteed Title & Mort. Co.* v. *Scheffres* (247 App. Div. 294), where the court held that it could not accept " the narrow view that equity courts are impotent and powerless in a situation that has always been deemed, from time immemorial, to be peculiarly within equity power and jurisdiction " (p. 269).

The same conclusion was reached in *Home Owners' Loan Corp.* v. *Wood* (164 Misc. 215), where the court, applying a rule established in this judicial district applicable to mortgages given after July 1, 1932, insisted on a provision in the judgment that the deficiency be determined by proof of the market value of the property in accordance with section 1083-a of the Civil Practice Act. The court said that " the provision used in this judicial district for the determination of the amount of a deficiency judgment refers to

section 1083-a, not as applicable to a mortgage executed after July 1, 1932, but as affording the proper method of reaching a just conclusion as to what judgment the plaintiff should receive at the hands of a court of equity in the event there is a deficiency arising upon the sale of the mortgaged premises " (p. 218).

The doctrine of the *Monaghan* case was also followed in other decisions. (*Vogel* v. *Edwards*, 249 App. Div. 742; *Kurtz* v. *Ferrante*, 243 id. 739; *Dry Dock Savings Institution* v. *Harriman Realty Corp.*, 150 Misc. 860; affd., 244 App. Div. 793; *Chemical Bank & Trust Co.* v. *Schumann Associates, Inc.*, 150 Misc. 221.) The Appellate Division of this department, however, held that the *Van Bokkelen* case (*supra*) and *Guaranteed Title & Mort. Co.* v. *Scheffres* (275 N. Y. 30) made it necessary to take the opposite view, namely, that equity could properly interfere, if at all, only when extraordinary hardship in individual cases would otherwise result. (*Chase* v. *Harvey*, 253 App. Div. 15.)

*Honeyman* v. *Jacobs* (306 U. S. 539; 59 Sup. Ct. 702), decided on April 17, 1939, dispels any lingering doubt. The question was whether section 1083-a of the Civil Practice Act violated the contract clause. The Court of Appeals had held that it did not, on the ground, as pointed out above, that the temporary restrictions on deficiency judgments were justified by the emergency. (*Klinke* v. *Samuels*, 264 N. Y. 144.) The Supreme Court reached the same conclusion but significantly for a different reason. It held, in substance, that there was no unconstitutional impairment of the obligation because the new procedure was not inconsistent with the inherent power of a court of equity over foreclosure sales and deficiency judgments. The court said (at pp. 703, 704): " The contract contemplated that the mortgagee should make himself whole, if necessary, out of the security but not that he should be enriched at the expense of the debtor or realize more than what would repay the debt with the costs and expenses of the suit. Having a total debt of $15,771.17, with expenses, etc., of $1,319.03, appellant has obtained through his foreclosure suit the property of the debtor found without question to be worth over $25,000. He has that in hand. We know of no principle which entitles him to receive anything more. Assuming that the statute before its amendment permitted a recovery of an additional amount through a so-called deficiency judgment, we cannot say that there was any constitutional sanction for such a provision which precluded the Legislature from changing it so as to confine the creditor to securing the satisfaction of his entire debt."

The court also said (at p. 704): " Section 1083-a in substance assured to the court the exercise of its appropriate equitable powers.

By the normal exercise of these powers, a court of equity in a foreclosure suit would have full authority to fix the terms and time of the foreclosure sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or the price bid was inadequate. [Citing cases.] In this control over the foreclosure sale under its decree, the court could consider and determine the value of the property sold to the mortgagee and what the mortgagee would thus realize upon the mortgage debt if the sale were confirmed. See *Monaghan* v. *May*, 242 App. Div. 64, 67; *Guaranteed Title & Mortgage Co.* v. *Scheffres*, 247 id. 294.''

The court also relied on its recent decision in *Richmond Mortgage & Loan Corp.* v. *Wachovia Bank* (300 U. S. 124). There a statute of North Carolina provided, in substance, that when one holding a mortgage or other obligation secured by real estate, causes a sale of the property by a trustee, and becomes the purchaser for a sum less than the amount of the debt, and thereafter brings an action for the deficiency, the defendant may show by way of defense and setoff that the property was fairly worth the amount of the debt or that the sum bid was substantially less than the true value. The statute was upheld in its application to notes secured by deed of trust executed prior to its enactment on the ground that the obligation of a contract is not impaired by a law limiting the remedy if a remedy adequate for enforcing the obligation remains or is substituted. The court said (at p. 130): '' The act alters and modifies one of the existing remedies for realization of the value of the security, but cannot fairly be said to do more than restrict the mortgagee to that for which he contracted, namely, payment in full. It recognizes the obligation of his contract and his right to its full enforcement but limits that right so as to prevent his obtaining more than his due. By the old and well-known remedy of foreclosure a mortgagee was so limited because of the chancellor's control of the proceeding.''

The decisions of the Supreme Court under the contract clause are binding on State courts. (*McCullough* v. *Virginia*, 172 U. S. 102, 109.) Chapter 510 of the Laws of 1938 is identical with section 1083-a of the Civil Practice Act. *Honeyman* v. *Jacobs* and *Richmond Mortgage & Loan Corp.* v. *Wachovia Bank* clearly embrace the issue here. The statute is constitutional and the motion to vacate the deficiency judgment must be granted.

One final question remains. Plaintiff has asked, in the event of an adverse decision, for leave to apply again for judgment in accordance with the statute. The defendants oppose it. May such permission be given or is the right now barred?

Chapter 510 of the Laws of 1938 provides that the application for judgment must be made within ninety days after delivery of the deed on foreclosure. This limitation, it would appear, is procedural and not jurisdictional. (*Jamaica Savings Bank* v. *Risian Realty Corp.*, 165 Misc. 372, 374.)

The statute also provides that "if no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist." If this be taken to mean that the debt shall be "deemed" to be satisfied for every purpose, the provision is of doubtful constitutionality. (*Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555, 580, 581, 584; *Honeyman* v. *Hanan*, 275 N. Y. 382, 395; *Matter of City of New York* [*Neptune Ave.*], 271 id. 335.) There is no need, however, to decide that here.

Plaintiff applied for deficiency judgment during the ninety-day period. The application, it is true, was not in accordance with the statute. But it may not for that reason be completely disregarded as a mere nullity. It had at least some of the consequences of a valid proceeding. (*Gaines* v. *City of New York*, 215 N. Y. 533, 539.) Judicial aid was invoked in good faith to enforce a legal obligation. Having acted in time, however erroneously, plaintiff's right to an adjudication on the merits is not affected. To bar it would be to impose a penalty not required by the statute and inconsistent with its purpose. (*Heiman* v. *Bishop*, 272 N. Y. 83, 85.) A result so repugnant to ordinary standards of justice should be avoided whenever possible. Fortunately, it is seldom inevitable. There is ample authority to prevent it here. Whether the power is inherent or statutory seems immaterial. It is enough that it undoubtedly exists. (Civ. Prac. Act, §§ 10, 23; *Berkman* v. *Silverstein*, 245 App. Div. 891; *Catholic Women's Benevolent Legion* v. *Burke*, 253 id. 261, 264; *Hamlin* v. *Callan*, 254 id. 617, 618. Cf. *Hamilton* v. *Royal Ins. Co.*, 156 N. Y. 327; *Littrell* v. *Allemania Fire Ins. Co.*, 224 App. Div. 523; *Hammond* v. *Shepard*, 50 Hun, 318, 323.)

The motion to vacate the judgment is granted, with ten dollars costs. Plaintiff is given leave to apply for deficiency judgment, within twenty days after entry of the order, by complying with the provisions of section 1083 of the Civil Practice Act, as amended by chapter 510 of the Laws of 1938. Submit order.